### HALLE et v SQUIRE

Ohio Common Pleas, Cuyahoga Co

Decided May 19, 1937

Halle, Harris, Haber & Berick, Cleveland, Luther Day, Cleveland, Cravath, DeGersdorff, Swaine & Wood, New York, for plaintiff.

Herbert S. Duffy, Attorney General, by Special Counsel, E. S. Lindemann, Cleveland, Duncan, Leckie, McCreary, Schlitz & Hinslea, Cleveland, Ulmer, Berne & Gordon, Cleveland, assistant special counsel, for defendant.

### OPINION

By HURD, J.

This is an action by the plaintiffs praying for an order restraining and enjoining the defendant as superintendent of banks of the state of Ohio, in charge of the liquidation of the Union Trust Company in Cleveland, Ohio, from taking any action to reject or disclaim a certain lease dated June 30, 1919, given by the plaintiffs to the First Trust & Savings Company by consolidation now the Union Trust Company. The evidence in this case is presented upon an agreed statement of facts. From this statement of facts it appears that the original term of said lease was for 99 years from July 1, 1919, with a right of extension for a further period of 99 years. The lease covered premises on the north side of Superior Avenue in the city of Cleveland. The present plaintiffs are the successor lessors. It further appears that on the 15th of June, 1933, the defendant Squire's predecessor in office, Ira J. Fulton, as superintendent of banks of the state of Ohio, having taken possession of the business and property of the Union Trust Company, for purposes of liquidation, filed his application in this court for leave to reject the lease in question as being burdensome, a fact which is conceded by the stipulations herein filed.

Thereafter this court granted the application of the superintendent. Within five days thereafter the plaintiff commenced this action now before the court. The plaintiffs object to the action of the superintendent of banks in rejecting and disclaiming the lease and deny the right of the superintendent to reject and disclaim the lease. While it appears that other grounds were urged upon the initial hearing before this court for authority to reject the lease, the only ground urged before this court upon this hearing is that the action of the superintendent is violative of Article 2, §28 of the Constitution of the State of Ohio, forbidding the enactment of retrospective laws and laws impairing the obligation of contract and in the latter respect is also violative of Article 1, §10 of the Constitution of the United States.

It is conceded by all parties that on June 30, 1919, the date of the execution of the lease here involved, the Ohio statutory provisions with respect to the liquidation of the insolvent banks were in a large part contained in §§742 and 742-1 through 16 GC, and it is claimed by the plaintiffs herein that inasmuch as the section of the General Code then operative did not contain the express words contained in §710-95, GC now in effect, specifically authorizing the superintendent to reject or disclaim any lease or contract which he might consider burdensome, that, therefore, the superintendent does not have the right to proceed to reject and disclaim the lease in question, and that such action upon his part constitutes an impairment of the obligation of contract.

Extended and comprehensive briefs have been filed by counsel supplementary to oral arguments which were most ably and interestingly presented. This court has reviewed the briefs and has considered the oral arguments and is firm in its conclusion that the prayer of the petition for injunction should be denied.

We are of the opinion that the action of the superintendent of banks, acting under the provisions of §710-95, GC, in rejecting and disclaiming the lease did not constitute an impairment of any contract rights of the lessors. We take the view that the superintendent is acting merely in his capacity as a statutory officer of the state in the liquidation of the business of the Union Trust Company. As such, although acting as a statutory officer and having only such

powers as are granted to him by statute, he is not the successor of the Union Trust Company in the sense that he assumes its liabilities ipso facto, when he takes over the affairs of the bank for liquidation. The Union Trust Company, as a corporation, still exists as a legal entity. True, it is insolvent and fundamentally this fact is the essence of plaintiff's grievance. It, together with other banks of the city of Cleveland, failed to meet its obligations in the regular course of business and the Legislature of this state on the 27th day of February, 1933, enacted new laws for the administration and liquidation of such insolvent banks, amending and supplementing existing laws on the subject.

It must be conceded at the outset that there was never any contractual relationship existing between the superintendent of banks and these plaintiffs. Certainly there is no obligation on the part of the superintendent of banks to assume any contractual relationship with these plaintiffs. In our opinion the superintendent of banks is not impairing the obligation of any contract which may have existed. He is merely, as a statutory officer of the state, rejecting and disclaiming this particular contract. To grant an injunction in this case would be equivalent to saying that the superintendent of banks as a statutory officer of the state must assume such contractual obligations of the insolvent bank. This never has been a principle of liquidation of financial institutions in this state and this court of equity is not inclined seriously to entertain such a proposal at this time. It must be conceded, we believe, that corporations are creatures of the state and as such are subject in all respects to regulation by the state. This proposition has a peculiar application to corporations organized and authorized to receive money of the public for deposit. In this respect such corporations are imbued with a public interest and the state in recognition of this fact seeks to protect the public by exercising a greater degree of control and regulation over such corporations than it does over corporations not imbued with a public interest. Therefore, the state seeks to regulate such institutions as going concerns and when they become insolvent seeks to regulate and control their liquidation.

If we accept the proposition that the right to regulate exists while they are going concerns, it follows logically that the right to regulate and to manage and to liquidate applies when such institutions become insolvent. In order to do this the state creates an agency and places a person in charge thereof denominated as superintendent of banks, and grants authority to said superintendent to regulate and to liquidate. Whatever rights may have existed against the Union Trust Company, as a legal entity, and whatever obligations may have existed still exist in law. True, the financial responsibility of the Union Trust Company has, in part, at least, ceased to exist with respect to these plaintiffs as well as with respect to many other persons who placed their money with the institution for deposit. It would indeed be a happy solution of problems such as are here involved if the state of Ohio could by means of some kind of a financial blood transfusion revivify the financially sick and disabled corporate body for the benefit of all creditors and for the benefit of all persons having claims against an insolvent corporation. If the state were to attempt such a program it would have a much more serious relief problem than the relief problem, admittedly serious, which now confronts the state. All that the state can do in this and in similar cases is to proceed to liquidate the assets of the insolvent bank as it finds them for the benefit of all creditors and in so doing it cannot undertake to continue executory contracts and leases which its liquidating agent considers burdensome. To do so would be to grant a preference in favor of one group of creditors claiming certain contract rights at the expense of other creditors having contract rights different in kind, perhaps, but equal in degree.

If we understand their position correctly, counsel for plaintiffs freely concede the right in the state to disclaim and reject leases entered into since the enactment of §710-95, GC, but deny that such a right did exist under §§742 and 742-1 through 16 GC in effect at the time of entering into the lease in question. In our opinion this position is untenable. We hold to the view that the new section §710-95 GC was merely declaratory of the law as it existed under old statutes existing at the time of the execution of the lease in question.

It is clear to us that §742-2 et seq., GC in existence at the time of the execution of the lease referred to which granted authority to the superintendent to take charge of an insolvent bank and to do such acts as he deemed necessary for the purpose of preserving its assets and of liquidating its affairs was fully adequate for the

exercise of the power and authority to reject or disclaim any lease of an insolvent bank when he considered such lease burdensome. Beginning with the earliest days in the history of the law in respect of the liquidation of insolvent estates and extending on down to the present day the decisions of the courts of England and America sustaining this view, have been so complete, consistent and decisive as to make an extended citation of authorities in support thereof entirely superfluous.

Entertaining these views as we do, namely, that the state has the power to regulate and to liquidate the affairs of financial institutions authorized to receive money on deposit and that in rejecting executory contracts or leases it does not impair the obligations thereof," and that such power has existed in the state for many years prior to the execution of the lease in question, the injunction prayed for will be denied, the petition dismissed and judgment rendered for the defendant for its costs. Order See Journal.